[L. A. No. 6063. Department One.—November 20, 1920.]

## SIMONS BRICK COMPANY (a Corporation), Respondent, v. ED WIGLESWORTH, Appellant.

[1] GUARANTY—IMMUNITY OF HOGS FROM CHOLERA—EMPLOYMENT OF VACCINE COMPANY — STATEMENT OF REPRESENTATIVE OF COMPANY —TIME OF ACCEPTANCE OF PROPOSAL.—A statement by the president and principal stockholder of a vaccine company to the president of a corporation that if the latter would employ his company to vaccinate its hogs with anti-cholera serum, he would personally warrant or guarantee that such vaccination would render the hogs immune from cholera, was a proposal which had to be accepted within such time as the parties contemplated it would remain open, and, in the absence of an express understanding, within such time as it could be taken they reasonably had in mind under all the circumstances.

[2] ID.—TERMS OF EMPLOYMENT—EVIDENCE.—In this action upon an alleged contract that if plaintiff would employ a certain company to vaccinate the plaintiff's hogs with anti-cholera serum, the defendant would personally warrant or guarantee that such vaccination would render the hogs immune from cholera, the evidence is held sufficient to justify the conclusion implied in the court's finding that it was understood that the defendant's proposal of guaranty remained open until the plaintiff actually came to vaccinate and employed the vaccine company for that purpose, and that the employment was upon an understanding of which the guaranty of some months before was a part.

[3] ID.—STATUTE OF FRAUDS.—A promise which may be aptly termed a guaranty need not be in writing unless it is a promise to answer for the debt, default, or miscarriage of another.

[4] WARRANTY—VACCINATION OF HOGS.—There is no implied warranty in the employment of a vaccine company to vaccinate hogs that the hogs will be rendered immune from cholera, but only that reasonable skill and care will be exercised in the selection and application of the vaccine.

APPEAL from a judgment of the Superior Court of Los Angeles County. L. H. Valentine, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. A. Alderson, K. A. Miller and Noyes & Heath for Appellant.

Richard J. O. Culver for Respondent.

OLNEY, J.—This is an appeal by the defendant from a judgment against him upon his alleged contract that if the plaintiff would employ a certain company known as the Interstate Vaccine Company to vaccinate the plaintiff's hogs with anti-cholera serum, the defendant would personally warrant or guarantee that such vaccination would render the hogs immune from cholera, and he would pay for any hog vaccinated which subsequently died of that disease. The trial court found that a contract of the character stated was made; that the plaintiff in reliance upon it employed the Interstate Vaccine Company to vaccinate its hogs; that its hogs were so vaccinated; that a number thereafter died of cholera, and that the net loss to the plaintiff by the death of the hogs was $5,637.20, for which judgment was given the plaintiff. There are but two questions presented by the appeal: First, is the finding that there was a contract supported by the evidence? and, second, was the promise of the defendant upon which the claim of contract is based, and which admittedly was oral only, one which had to be in writing under the statute of frauds?

As to the first question, the sufficiency of the evidence to sustain the finding mentioned, there was direct evidence as to the making of a promise by the defendant. It also appears clearly that the promise when made was intended to be contractual in character; that is, was intended as the definite assumption of an obligation by the defendant in case it were accepted by the plaintiff. According to the evidence, the defendant, in the spring of 1916, called on the president of the plaintiff, stated that he was the president and principal stockholder of the Interstate Vaccine Company, endeavored to persuade the president of the plaintiff to have its hogs vaccinated by that company, and in that connection stated that if his company were employed to do this, he personally would guarantee the immunity of the hogs from cholera for the balance of their natural lives, and would pay the value of any that might subsequently die of cholera. If this proposal had been accepted then and there by the plaintiff by the employment of the Vaccine Company, there could be no doubt as to the existence of the contract or as to the sufficiency of the evidence to sustain the finding that there was a contract. The only doubt in the matter arises from the fact that the Vaccine Company

was not employed at that time, was not in fact employed until the following fall. Then the plaintiff, through the local agent of the company and without any further dealings with the defendant, employed the Vaccine Company, and the hogs were vaccinated. The question on this branch of the case, therefore, is as to whether or not this employment can be related back to the defendant's promise of some months before. [1] The defendant's statement to the president of the plaintiff was, of course, a proposal which had to be accepted within such time as the parties contemplated it would remain open, and, in the absence of any express understanding upon the point, within such time as it could be taken they reasonably had in mind under all the circumstances of the case. If nothing appeared other than that the defendant had made the proposal in the spring and the plaintiff months later had employed the Vaccine Company to vaccinate its hogs, it might well be taken that the employment of the Vaccine Company was an entirely new matter, not relating back in any manner to the conversation of the previous spring, so that if the defendant were to be held liable it would have to be on some new promise made at that time. But, according to the testimony for the plaintiff, which must be accepted in view of the court's findings, the further facts were that the conversation between the defendant and the plaintiff's president in the spring ended with the statement by the latter that he would keep in touch with the defendant and would call upon him when the plaintiff was ready to vaccinate. It also appears that during the summer the local agent for the Vaccine Company, who had been present at the original interview between the plaintiff's president and the defendant and had heard the latter's statement with regard to the guaranty, called upon the plaintiff's president and was informed that when the plaintiff was ready to vaccinate it would call upon him, and the guaranty was again spoken of as an inducing reason for the plaintiff to employ the Vaccine Company. [2] This evidence is sufficient to justify the conclusion implied in the court's finding, that it was understood that the defendant's proposal that he would guarantee the immunity of the hogs if the plaintiff employed the Vaccine Company remained open until the plaintiff actually came to vaccinate and employed the Vaccine Company for that

purpose, and that the employment was upon an understanding of which the guaranty of some months before was a part. This conclusion is strengthened by evidence that the following spring, when the defendant again personally met the plaintiff's president, he renewed his statement that he guaranteed the results of the use of his serum. Such a statement, of course, made after the Vaccine Company had been employed and the hogs had been vaccinated, would not itself be a binding promise, but it is of weight as showing what the parties understood were the terms upon which the Vaccine Company had been employed. There is evidence in the case which, perhaps, is sufficient to have justified a different conclusion as to the understanding, but there is no occasion for discussing it. The evidence stated is sufficient to justify the conclusion which the trial court reached, and that is final upon this branch of the case.

[3] As to the point that the promise of the defendant was not in writing, the witnesses called to prove the making of the promise, including the plaintiff's president himself, all speak of the promise as one to "guarantee" the immunity of the hogs. Stress is laid upon the use of this word as indicating or proving a promise which had to be in writing in order to be enforceable. But it is not every promise which may be aptly termed a guaranty that is required to be in writing. In this case, if the defendant had himself been selling his serum directly to the plaintiff and had stated to the latter that if it were used he would "guarantee" the results, the word would have been used in a customary and proper sense, and yet there could be no doubt that the promise would be a primary one and would not have to be in writing to be enforceable. It is only when the "guaranty" is a promise to answer for the debt, default or miscarriage of another that it must be in writing. (Secs. 1624, 2787, 2793, and 2794, Civ. Code, and sec. 1973, Code Civ. Proc.) The question in the present case is, Was the promise of the defendant one to answer for the obligation of another? The only obligation of another for which it can possibly be considered that the defendant intended to assume responsibility is an obligation on the part of the Vaccine Company warranting the results of the use of its serum. There is no other person and there is no other obli-

gation to which the defendant's promise can possibly have related.

[4] But it is plain from the evidence that no such obligation existed. Practically all that appears is that the plaintiff employed the Vaccine Company to vaccinate its hogs and paid it for so doing. There is no implied warranty in such an employment that the subject of the treatment will be rendered immune, any more than there is a warranty by a physician vaccinating for smallpox that the patient will be immune from that disease. There is in each case an implied warranty or agreement that reasonable skill and care will be exercised in the selection and application of the vaccine, but that is all. Nor is there anything in the present case from which an express warranty on the part of the Vaccine Company may be inferred. The utmost that appears is that when the local agent of the Vaccine Company called on the plaintiff's president some time prior to the employment of the company to vaccinate, he left with the president an advertising pamphlet containing a form of warranty contract by the Vaccine Company. But the plaintiff's president testifies that he did not read it, and no such contract was executed, and there is nothing to show that it in any manner entered into the subsequent employment of the Vaccine Company. The situation is that if the plaintiff had sued the Vaccine Company instead of the defendant for the loss of its hogs, it would have failed of recovery for want of proof of any obligation on the part of the company to make good that loss.

It is not, however, a wholly sufficient answer to the claim of the defendant to say that no obligation on the part of the Vaccine Company in fact existed. It might still be that the defendant's promise was only to insure such an obligation, assuming that it would be made. In such a case, it would still be a promise to answer for the obligation of another, and the fact that that obligation did not subsequently arise as it was contemplated it would, would not change the nature of the defendant's promise or avoid the necessity for its being in writing. As the conversation in which the defendant's promise was made is repeated in the evidence, the promise is given, in some instances, a form from which it might perhaps be inferred it was intended as a mere backing up of what the defendant assumed would

be an obligation of the Vaccine Company. In other instances it has the form of an unqualified and primary promise by the defendant wholly without relation to any corresponding obligation on the part of the Vaccine Company. The view that the latter was its character and was reasonably taken by the plaintiff to be such is strengthened by the fact that the defendant represented that he made the promise because he was practically the Vaccine Company, owning ninety-six per cent of its stock, so that it made little difference to him whether he assumed a primary obligation or only one to answer for the Vaccine Company. While perhaps a contrary finding would not be wholly without support in the evidence, we think it fairly clear, on the other hand, that the evidence cannot be said to be insufficient to sustain the implied finding of the trial court that the defendant's promise was intended by him as a promise that he would directly guarantee or warrant the efficacy of the serum which he was seeking to persuade the plaintiff to use, and was not intended merely as a promise to stand good for the fulfillment by the Vaccine Company of such guaranty or warranty by it. It follows that the promise was enforceable although not in writing.

Judgment affirmed.

Shaw, J., and Lawlor, J., concurred.